J-S62019-17

2017 PA Super 411

| | | |
|---|---|---|
| IN THE INTEREST OF: L.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: CCCYS | : | |
| | : | No. 884 MDA 2017 |

Appeal from the Order Entered May 24, 2017
In the Court of Common Pleas of Clinton County Juvenile Division at No(s):
CP-18-DP-0000009-17

BEFORE:   STABILE, MOULTON, and STRASSBURGER,* JJ.

CONCURRING OPINION BY STRASSBURGER, J.:**FILED DECEMBER 27, 2017**

There is no doubt that prenatal drug use is affecting adversely increasing numbers of our Commonwealth's children. Fueled in part by the opiate drug epidemic, the rate of neonatal hospital stays related to substance use increased by 250% between fiscal years 2000 and 2015. PA Healthcare Cost Containment Council, NEONATAL AND MATERNAL HOSPITALIZATIONS RELATED TO SUBSTANCE USE, (2016). Nearly 1 in 50 neonatal hospital stays in fiscal year 2015 involved a substance-related condition. ***Id.***

There is also no doubt that most pregnant women who use illegal drugs during their pregnancies do so not because they wish to harm their child, but because they are addicted to the drugs. While I join the Majority's opinion today based upon the language of the statute, I question whether

_____

*Retired Senior Judge assigned to the Superior Court.

treating as child abusers women who are addicted to drugs results in safer outcomes for children.

The Child Protective Services Law (CPSL) contains explicit provisions allowing child welfare agencies to intervene in certain instances where a child is affected by maternal drug use at birth. *See* 23 Pa.C.S. § 6386 (requiring health care providers to report to the appropriate county agency instances of children who are under one year of age and affected by certain types of substance abuse and mandating the agency to conduct an assessment of risk to the child, ensure the child's safety, and provide services to the family as needed). Pennsylvania added these requirements to the CPSL in 2006 in response to a 2003 amendment to the federal Child Abuse Prevention and Treatment Act (CAPTA).

When addressing Congress during the debate of the 2003 amendment to CAPTA, Congressman James Greenwood, a former child services caseworker who authored the amendment, stated that the goal was to intervene after birth and prevent future harm to children who are at risk of child abuse and neglect due to their parents' drug use. 149 Cong. Rec. H2313, H2362 (daily ed. March 26, 2003) (statement of Congressman James Greenwood). Congressman Greenwood noted, however, that treating prenatal drug use as child abuse is "problematic" because the drug use typically results from a woman's substance abuse problem. *Id.* Furthermore, he described how treating prenatal drug use as child abuse

may result in further unintended harm to the child because it "may even drive [the mother] away from the hospital if she knows she is going to face [being treated as a child abuser], and she may choose to deliver at home in a dangerous situation."[1] *Id.*

Not only may it cause a woman to avoid the hospital, in my view, labeling a woman as a child abuser may make it less likely that the woman would choose to seek help for her addiction during pregnancy or receive prenatal care. Moreover, because the CPSL permits the agency to intervene when a newborn is affected by prenatal drug use, and the agency may even seek to remove the child or have the child adjudicated dependent if continued drug use poses an ongoing risk to the child, determining that a woman is a child abuser solely based upon her prenatal drug use does little to ensure the safety of the child.[2]

In addition, although the Majority limits its decision to illegal drug use during pregnancy, *see* Majority Opinion at 8, its construction of the statute

---

[1] CAPTA explicitly specifies that the requirement that health care providers notify child protective services "shall not be construed to – (I) establish a definition under Federal law of what constitutes child abuse or neglect; or (II) require prosecution for any illegal action[.]" 42 U.S.C. § 5106a(b)(2)(B)(ii).

[2] L.B.'s guardian *ad litem* did not take a position on this issue in the trial court and did not file a brief before this Court. Although the issue primarily affects Mother, it does affect L.B. indirectly; therefore, in my view, the guardian *ad litem* should have determined whether it was in L.B.'s best interest to make a finding of child abuse against Mother and advanced the corresponding position.

supports no such limitation.  We should not delude ourselves into thinking that our decision does not open the door to interpretations of the statute that intrude upon a woman's private decisionmaking as to what is best for herself and her child.  There are many decisions a pregnant woman makes that could be reasonably likely to result in bodily injury to her child after birth,[3] which may vary depending on the advice of the particular practitioner she sees and cultural norms in the country where she resides.  Should a woman engage in physical activity or restrict her activities?  Should she eat a turkey sandwich, soft cheese, or sushi?  Should she drink an occasional glass of wine?  What about a daily cup of coffee?  Should she continue to take prescribed medication even though there is a potential risk to the child?  Should she travel to countries where the Zika virus is present?  Should she obtain cancer treatment even though it could put her child at risk?  Should she travel across the country to say goodbye to a dying family member late in her pregnancy?  Is she a child abuser if her partner kicks or punches her in her abdomen during her pregnancy and she does not leave the relationship because she fears for her own life?  While it is true that the

---

[3] Child abuse may exist even when the child does not suffer bodily injury as long as there is a reasonable likelihood of bodily injury.  *See* 23 Pa.C.S. § (b.1)(5).

- 4 -

woman must act at least recklessly for her decision to constitute child abuse, reasonable people may differ as to the proper standard of conduct.[4]

Although the legislature expanded the definition of child abuse in 2013 to capture more instances where children are placed at risk, I am not certain that the legislature really intended the CPSL's child abuse definition to apply to decisions that pregnant women make. However, based upon the language of the statute, what we have decided today is that the legislature intended that a woman be found to be a child abuser when she engages in any act, or fails to engage in any act, prior to a child's birth, if that act creates a reasonable likelihood of bodily injury to a child once he or she is

---

[4] The CPSL incorporates the following definition of recklessness:

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

23 Pa.C.S. § 6303(a) (incorporating 18 Pa.C.S. § 302). The CPSL emphasizes that "conduct that causes injury or harm to a child or creates a risk of injury or harm to a child shall not be considered child abuse if there is no evidence that the person acted intentionally, knowingly or recklessly when causing the injury or harm to the child or creating a risk of injury or harm to the child." 23 Pa.C.S. § 6303(c).

born, so long as she consciously disregards a substantial and unjustifiable risk that such an injury may result.[5]  This is quite broad indeed.

This case presents an issue of first impression.  In my opinion, it also presents an issue of substantial public importance that should be reviewed by this Court *en banc* or our Supreme Court.  I respectfully concur.

Judge Moulton joins.

---

[5] I note, as the Majority does, that the dependency petition in this case alleged only that Mother committed child abuse under subsection 6303(b.1)(1).  CYS did not begin to rely upon subsection 6303(b.1)(5), which is broader than subsection 6303(b.1)(1), until CYS presented argument and briefs before the juvenile court.  It does not appear that Mother objected to inclusion of subsection 6303(b.1)(5).  However, parents are entitled to notice of the allegations being pled against them and CYS should have requested permission to amend its dependency petition.